IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| KENNETH SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:12cv790 (JCC/TRJ) |
| | ) |
| PATRICK R. DONAHOE, | ) |
| Postmaster General, United | ) |
| Postal Service, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on the "Motion to Dismiss and Motion for Summary Judgment" (the "Motion to Dismiss and for Summary Judgment") [Dkts. 8, 13][1] by Defendants Patrick R. Donahoe, Postmaster General, United States Postal Service; Dr. Francis Collins, Director, National Institute of Health; and Arne Duncan, Secretary of Education, United States Department of Education (collectively "Defendants"). Also before the Court is Defendants' "Motion to Strike Plaintiff's Response in Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment" (the "Motion to Strike") [Dkt. 16] and Plaintiff Kenneth Smith's "Motion for Settlement No Legal Response From

---
[1] The Court notes that though there are two docket entries to reflect the two motions, Defendants filed both motions in one document and support their motions with a single memorandum of law in support.

1

Defendant" (the "Motion for Settlement") [Dkt. 15]. For the following reasons, the Court will grant Defendants' Motion to Dismiss and for Summary Judgment, as well as grant Defendants' Motion to Strike and deny Plaintiff's Motion for Settlement.

## I. Background

### A. Factual Background

*Pro se* Plaintiff Kenneth Smith is a federal employee who works for the United States Postal Service ("USPS"). (Am. Compl. [Dkt. 2] ¶ 1, 14, 15.) In addition to his employment at USPS, Plaintiff has conducted his own independent genetic research and published a book which details this research and his conclusions on "how DNA really works." (*Id.* ¶ 15.) On April 2, 2012, Plaintiff placed an advertisement containing information about his book and his religious and genetic theory on the USPS's bulletin board. (*Id.* ¶ 16) Plaintiff alleges it was soon removed by an unspecified person at an unspecified time, then replaced by him, and then removed again by an unknown person. (*Id.*) On April 19, 2012, Plaintiff's supervisors told him that he was not allowed to continue posting this advertisement on the bulletin board and informed Plaintiff of customers' complaints about it being offensive. (*Id.* ¶ 17.)

Plaintiff also alleges that the National Institute of Health ("NIH") and the United States Department of Education ("USDE") improperly support "a biased result towards atheist

opinion," a "scientific religion," and evolution in their testing and public school instruction. (*Id.* ¶ 20-29.) Relatedly, Plaintiff asserts that these agencies have failed to consider and/or promote in testing and public school instruction his theory on "how DNA works" based on "factual genetic information supporting creationism" and "a Human Genetic Normal Species," thus "blocking Plaintiff from possible untold revenue return." (*Id.*)

B. Procedural Background

On May 12, 2012, Plaintiff filed an administrative complaint with the USPS alleging employment discrimination based on race, religion and genetic information which he alleged occurred on April 19, 2012 when postal officials informed him that he no longer could post his advertisements about his religious and genetic research, theory, and book. (Exhibit A to Defendants' Memorandum in Support of Motion to Dismiss and for Summary Judgment ("Def. Ex. A") [Dkt. 9-1] at 1.) On May 21, 2012,[2] the USPS construed this claim as an amendment of another formal complaint which Plaintiff had filed on March 12, 2012[3] and

---

[2] The Court notes that the document is dated "March 21, 2012" but concludes that this clearly was meant to read "May 21, 2012" given that the document refers to incidents occurring on dates after March (*e.g.* the alleged occurrence of discrimination in April 2012 and Plaintiff's filing of his administrative complaint in May 2012).

[3] In that earlier administrative complaint, Plaintiff alleged discrimination on the basis of race, religion, and genetic information, as well as retaliation, when he was passed over for overtime and was charged with absence without leave. (*Id.* at 12.) Plaintiff does not raise these allegations in the instant case.

3

dismissed his complaint on this issue, concluding that he had failed to state a claim because he was not adversely affected with respect to a term, condition, or privilege of his employment when postal officials told him he could no longer post his advertisement on the bulletin board. (*Id.* at 2-3.) On June 19, 2012, after the investigation was completed on the remaining issues in his administrative complaint, Plaintiff requested a hearing with an Administrative Judge of the Equal Employment Opportunity Commission ("EEOC") on all of his claims." (Def. Ex. B [Dkt. 9-2] at 3.) As of the date of Plaintiff's filing his Complaint in this Court, and as of the present, a hearing with an Administrative Judge had not occurred and the USPS had not issued a final agency decision.

On July 13, 2012, Plaintiff filed a Complaint in this Court against Patrick R. Donahoe, Postmaster General, USPS; Dr. Francis Collins, Director, NIH; and Arne Duncan, Secretary of Education, USDE, bringing suit against these federal agencies and the named officers in their official capacity.[4] [Dkt. 1.]

---

[4] The Court agrees with Defendants' construal of Plaintiff's complaint as being brought only against the federal agencies and the named officers in their official capacity, as opposed to the officers' individual capacities. As Defendants note, Plaintiff never asserts that he is suing these officials in their individual capacities nor provides any allegations that these individual government officials personally undertook actions against Plaintiff with respect to the incidents giving rise to this suit. Instead, Plaintiff makes references which indicate that he intends to bring this action against the agencies and the officials in their official capacity. (*See e.g.* Am. Comp. ¶ 2-4, 11-12 (referring solely to the agencies), ¶ 7 (citing 28 U.S.C. § 1391(e) which discusses where civil actions may be brought when the suits are brought against federal government officials in

4

On August 3, 2012, Plaintiff filed an essentially identical Amended Complaint against the same parties, only adding a Certificate of Service. [Dkt. 2.] Plaintiff brings five causes of action against all defendants: (1) a First Amendment retaliation claim under 42 U.S.C. § 1983 (Count I); (2) a First Amendment viewpoint discrimination claim under 42 U.S.C. § 1983 (Count II); a Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 (Count III); a Title VII religious discrimination claim under 42 U.S.C. § 2000e (Count IV); and a Title II Genetic Information Non-discrimination Act claim purportedly under 42 U.S.C. § 2000e-16c(a). (*Id.* ¶ 30-54.)

On November 20, 2012, Defendants filed their Motion to Dismiss and for Summary Judgment [Dkts. 8, 13], accompanying memorandum of law [Dkt. 9], and proper *Roseboro* notice [Dkt. 10]. Plaintiff's opposition brief was due on December 11, 2012. Plaintiff untimely filed his opposition on December 26, 2012. [Dkt. 14.] On December 31, 2012, Defendants filed their Motion to Strike Plaintiff's untimely opposition brief. [Dkt. 16.] Defendants replied to Plaintiff's opposition brief on January 2, 2013. [Dkt. 17.]

On December 26, 2012, Plaintiff filed a Motion for Settlement No Legal Response From Defendant (the "Motion for

---

their official capacities), and ¶ 17 (expressly seeking monetary damages from the agencies and "those in their official capacity").)

Settlement"). [Dkt. 15.] Defendants filed their opposition on January 2, 2013. [Dkt. 18.]

Defendants' Motion to Dismiss and for Summary Judgment, Defendants' Motion to Strike, and Plaintiff's Motion for Settlement are before the Court.

## II. Standard of Review

A. Jurisdiction

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Defendants may attack subject matter jurisdiction in one of two ways. First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002). In such instances, all facts alleged in the complaint are presumed to be true. *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).

Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780. In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject

6

matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Velasco v. Gov't of Indonesia*, 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment"); *Adams*, 697 F.2d at 1219; *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994). In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219; *Johnson v. Portfolio Recovery Assocs.*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

    B.   <u>Failure to State a Claim</u>

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe

7

factual allegations in favor of the plaintiff. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Moreover, a court "is not bound to accept as true a legal

conclusion couched as a factual allegation." *Iqbal*, 129 S.Ct. at 1949-50.

      C.    <u>Summary Judgment</u>

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party must come forward and show that a genuine dispute exists. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv.,*

9

*Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, the court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

    D.   *Pro Se* Plaintiff

Complaints filed by *pro se* plaintiffs are construed more liberally than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). "However inartfully pleaded by a *pro se* plaintiff, allegations are sufficient to call for an opportunity to offer supporting evidence unless it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief." *Thompson v. Echols*, No. 99-6304, 1999 WL 717280 (4th Cir. 1999) (citing *Cruz v. Beto*, 405 U.S. 319 (1972)). While a court is not expected to develop tangential claims from scant assertions in a complaint, if a *pro se* complaint contains potentially cognizable claims, the plaintiff should be allowed to particularize those claims. *Id.* (citing *Beaudett v. City of*

*Hampton*, 775 F.2d 1274 (4th Cir. 1985); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir. 1965)).

### III. Analysis

A.  Defendants' Motion to Strike

Defendants move to strike Plaintiff's opposition brief to their Motion to Dismiss and for Summary Judgment because the brief was filed without good cause two weeks late on the day after Christmas, resulting in prejudice to Defendants due to holiday leave and from the loss of several days to draft their reply brief.  (Def. Mot. to Strike [Dkt. 16] at 2.)  Defendants filed their Motion to Dismiss and for Summary Judgment on November 20, 2012.  [Dkts. 8, 13.]  Under Local Rule 7(J), and as indicated in Defendants' proper *Roseboro* notice [Dkt. 10], Plaintiff had twenty-one days to file a response to the motion. *See* Local Rule 7(J); *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  As a result, the deadline to file an opposition was December 11, 2012.  Plaintiff, however, did not file his opposition until December 26, 2012 and did not provide any reasons justifying this delay.  [Dkt. 14.]  Even under the signature date on the opposition, December 20, 2012, Plaintiff's opposition is untimely.  (*Id.* at 31.)

Based on these calculations and Plaintiff's failure to provide good cause for his untimely filing, the Court will grant Defendants' Motion to Strike.

B.  Defendants' Motion to Dismiss and for Summary Judgment

1.  Constitutional Claims Under First and Fourteenth Amendments

a.  Claims Against the NIH and the USDE

Defendants argue that the Court should dismiss Plaintiff's constitutional claims under the First and Fourteenth Amendments against the NIH and the USDE in Counts I-III because the Court lacks subject matter jurisdiction over these claims as to these Defendants due to sovereign immunity. (Def. Mem. at 10.)

Unless waived, sovereign immunity protects the federal government and its agencies from suit and deprives a court of subject matter jurisdiction. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Jones*, 225 F.3d 468, 470 (4th Cir. 2000). Unlike the USPS in its "sue or be sued" clause, 39 U.S.C. § 401(1), the NIH and USDE have not waived their sovereign immunity from suit for constitutional claims. As a result, the Court finds that it does not have subject matter jurisdiction over Plaintiff's claims in Count I-III against the NIH and the USDE. Accordingly, these claims must be dismissed.

b.  Claims Against the USPS

As noted above, Defendants acknowledge the USPS's waiver of sovereign immunity from suit for constitutional claims. *See* 39 U.S.C. § 401(1); *Franchise Tax Bd. of California*

12

*v. U.S. Postal Serv.*, 467 U.S. 512, 517-18 (1984). Nonetheless, Defendants argue the Court also should dismiss Plaintiff's constitutional claims under the First and Fourteenth Amendment against the USPS in Counts I-III for both monetary and injunctive relief. First, Defendants argue that Plaintiff's claims for monetary relief under these counts should be dismissed because Plaintiff improperly attempts to use Section 1983 in Counts I-III. Section 1983 applies only to state actors acting under the color of state law, not to federal actors. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). As a result, these claims for monetary relief should be dismissed. (Def. Mem. at 12.) Even construing these claims under Section 1983 as claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Court still must dismiss these claims. A *Bivens* action cannot be maintained against federal agencies or federal agency officials sued in their official capacities, as is the case here. *Meyer*, 510 U.S. at 485-86; *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002), *aff'd on other grounds*, 540 U.S. 614 (2004). Therefore, whether brought under Section 1983 or *Bivens*, Plaintiff's claims for monetary relief against the USPS under Count I-III must be dismissed.

Second, Defendants argue that Plaintiff's claims for injunctive relief under these counts should be dismissed for a

number of independent reasons. (Def. Mem. at 13-20). The Court finds that these claims should be dismissed based on the first reason proffered by Defendants: that the remedies available to federal employees under the Civil Service Reform Act ("CSRA") preclude claims for injunctive relief against a federal agency which challenge the merits of the agency's administrative personnel decisions. (*Id.* at 13-14.) Under Fourth Circuit precedent, the remedial regime established by the CSRA for federal employees precludes a court from hearing such claims and the claims must be dismissed for lack of subject matter jurisdiction. *See Yokum v. U.S. Postal Service*, 877 F.2d 276, 280-81 (4th Cir. 1986)(holding CSRA precluded judicial review of merits of administrative personnel decision even where postal service employee was excluded from scope of protections provided for under the CSRA); *Pinar v. Dole*, 747 F.3d 899, 909 (4th Cir. 1984). Plaintiff concedes that he was, at all times relevant, a postal service federal employee, but he does not allege that he is a preference eligible postal service employee who, accordingly, can access judicial review of the merits of an agency's decision via Chapter 75 of the CSRA. Therefore, the Court lacks subject matter jurisdiction to hear Plaintiff's claims for injunctive relief in Counts I-III against the USPS as "*any* employee, including one in the Postal Service, who is not included in the provisions of Chapter 75 was intended by

14

Congress not to have the right to judicial review" over such claims. *Yokum*, 877 F.2d at 280 (quoting *Witzkoske v. United States Postal Service*, 848 F.2d 70, 73 (5th Cir. 1988)). Accordingly, the Court dismisses Plaintiff's claims for injunctive relief against the USPS under Count I-III.

        2.    <u>Title VII Religious Discrimination Claim</u>

Defendants argue that the Court should grant summary judgment on Plaintiff's Title VII discrimination claims against all Defendants in Counts IV because Plaintiff failed to exhaust his administrative remedies by filing his suit in federal court prematurely, a error that is not jurisdictional, or in the alternative, that the Court should dismiss the claims in Count IV for failure to state a claim. (Def. Mem. at 21-26.) The Court will resolve this count under Defendants' first argument.

Under this argument, Defendants move for summary judgment, rather than dismissal, for two reasons. To begin, Plaintiff did not include in either of his complaints any information regarding his administrative complaint and the corresponding timeline for his filing in federal court. [*See* Dkt. 1, 2.] As a result, Defendants must rely on evidentiary materials outside of the pleadings. (Def. Mem. at 21 n.15.) In addition, the Fourth Circuit has held that a court's subject matter jurisdiction was not impacted by whether a federal-sector Title VII complaint was *timely* filed with respect to the

15

exhaustion of administrative remedies.  *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006).  Given the non-jurisdictional nature of their argument, Defendants cannot rely on extraneous materials without converting the motion to dismiss to a motion for summary judgment.  Foreseeing this, Defendants therefore presented the argument against Counts IV-V via a motion for summary judgment included in the same document as their motion to dismiss.[5]

Based on the undisputed facts here, including the administrative and judicial record, and drawing all inferences in favor of Plaintiff, the Courts concludes that there is no genuine dispute of material fact regarding whether Plaintiff failed to timely exhaust his administrative remedies.  Summary judgment on Count IV thus must be granted.  Under the relevant timeline for administrative exhaustion here, Title VII provides that a federal employee only can file his or her complaint in federal court after the completion of a 180 day period from the filing of his or her administrative complaint with the agency.  *See* 42 U.S.C. § 2000e-16(c) (providing that "after one hundred and eighty days from the filing of the initial charge with the

---

[5] The Court notes that Plaintiff had actual notice that the Court might consider Plaintiff's motion as a motion for summary judgment on Counts IV-V based on the titling of Defendants' motion and on Defendants' submission of evidence extrinsic to the pleadings.  Therefore, "'by operation of the Federal Rules of Civil Procedure, [plaintiff] also should have been on notice that the . . . motion could be considered by the court to be a summary judgment motion.'"  *Talbot v. U.S. Foodservice, Inc.*, 191 F. Supp. 2d 637, 639 n.3 (D. Md. 2002) (quoting *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998)).

department, agency, or unit . . . an employee or applicant for employment, if aggrieved . . . by the failure to take final action on his complaint, may file a civil action . . ."); 29 C.F.R. § 1614.407(b) (stating that a federal employee may file in district court "after 180 days from the date of filing an individual or class [administrative] complaint if an appeal has not been filed and final action has not been taken").

In this case, on May 12, 2012, Plaintiff filed his administrative complaint with the USPS regarding the alleged employment discrimination arising from the April 19, 2012 incident. [Dkt. 9-1.] When he filed his original complaint in this Court on July 13, 2012 [Dkt. 1], Plaintiff had not yet received a final agency decision given that a hearing on his claims had not occurred yet in front of an Administrative Judge. In addition, the 180 day waiting period had not yet finished, regardless of whether the commencement of this period began with Plaintiff's May 12, 2012 administrative complaint which directly addressed the discrimination at issue here or with Plaintiff's earlier (March 12, 2012) administrative complaint of which the USPS concluded the May administrative complaint was an amendment. Given Plaintiff's premature filing in federal court, the Court concludes that the undisputed facts indicate that Plaintiff failed to timely exhaust his administrative remedies

17

and therefore, the Court grants Defendants summary judgment on the claim in Count IV.

### 3. Title II Genetic Information Discrimination Claim

The Court construes Count V as a genetic information non-discrimination claim under the Genetic Information Nondiscrimination Act (GINA) instead of a discrimination claim under Title VII.  Plaintiff identifies the claim as arising under GINA in the titling of that count, although he also improperly cites to Title VII as well and elsewhere in that count.  Nonetheless, given the Court's liberal construal of *pro se* plaintiffs' claims, the Court finds it most appropriate to analyze Count V as arising under GINA because that statute actually provides for a cause of action arising from discrimination on the basis of genetic information.

The Court concludes, however, that Plaintiff fails to state a claim under GINA.  GINA provides that an employer may not "discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee."  42 U.S.C. § 2000ff-1(a)(1).  The Act defines "genetic information" as (1) an individual's genetic tests; (2) the genetic tests of the individual's family members; (3) the manifestation of a disease or disorder of the individual's

family members; (4) an individual's request for, or receipt of, genetic services, or the participation in clinical research that includes genetic services by the individual or the individual's family member; and (5) the genetic information of a fetus. *See* 42 U.S.C. § 2000ff(4)(A); *see also* 29 C.F.R § 1635.3(c). In light of this definition of genetic information, the Court finds that Plaintiff has not pled any facts indicating that any of the Defendants requested or obtained Plaintiff's "genetic information" and discriminated against him on the basis of such "genetic information." *See Bullock v. Spherion*, No. 3:10-CV-465, 2011 WL 1869933, at *6 (W.D.N.C. May 16, 2011). Instead, Plaintiff only alleges that that the USPS instructed him not to post his book advertisement which allegedly explains "how DNA works" and that the NIH and USDE refuses to incorporate his genetic and religious theory on DNA into their testing and public education curriculum. Plaintiff's book and accompanying genetic and religious theory on DNA do not constitute "genetic information" under GINA. As a result, Plaintiff has failed to state plausibly a claim for genetic information discrimination under GINA, and Count V therefore must be dismissed.

    C.    <u>Plaintiff's Motion for Settlement</u>

Given the Court's decision to dismiss Counts I-III and V and grant summary judgment in favor of Defendants on Count IV,

19

the Court finds that Plaintiff's Motion for Settlement should be denied.

## I. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Strike. The Court also will grant Defendants' Motion to Dismiss and for Summary Judgment, dismissing Plaintiff's claims in Counts I-III and V against all Defendants and granting summary judgment to all Defendants on Plaintiff's claims in Count IV. The Court will deny Plaintiff's Motion for Settlement.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| January 8, 2013 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |